In re Robert N. BROWN and Barbara Bex Brown, Debtors.

Barbara Bex BROWN, Plaintiff,

v.

Virginia M. DELLINGER, Individually and d/b/a Dellinger Art & Antiques, Defendant.

Bankruptcy No. 80 00405.
Adv. Pro. No. 82 0066.

United States Bankruptcy Court, N. D. New York.

Aug. 27, 1982.

Laurence Sovik, Smith, Sovik, Kendrick, McAuliffe & Schwarzer, P.C., Syracuse, N.Y., for plaintiff.

Harold F. Simons, Hamilton, N.Y., for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

### Statement of the Case

On March 15, 1982, Barbara Bex Brown (hereinafter, Debtor) filed a complaint in this Bankruptcy Court. The complaint seeks to have this Court declare that certain alleged "surplus funds" from a pre-bankruptcy foreclosure of real estate owned by the Debtor are funds which are free from any right, title, or interest now asserted by Virginia M. Dellinger (hereinafter, Judgment Creditor) under orders made by the Appellate Division, Fourth Department, of the New York Supreme Court. Because the New York state court orders were rendered subsequent to the Debtor's petition in bankruptcy, the Debtor seeks this Court to declare those state court decisions and orders of December 23, 1980 and January 29, 1982 (sic) pertaining to and disallowing the Debtor's rights in the surplus funds to be null and void. Furthermore, the Debtor seeks a declaration that the surplus funds are property of the Debtor subject only to any taxes due to the Internal Revenue Service.

The Judgment Creditor has admitted most of the Debtor's factual allegations. The Judgment Creditor's answer alleges as an affirmative defense that the New York Supreme Court is the court of *original* jurisdiction and being such (1) has ordered the full amount of the surplus funds to be paid to the Onondaga County Treasurer, and (2) has appointed a referee to ascertain and report the amounts due to the Judgment Creditor and any other party with a lien on the surplus funds. The answer also contains a counterclaim which alleges that the Debtor now illegally withholds the surplus funds from the Onondaga County Treasurer. The Judgment Creditor prays for judgment (1) dismissing the Debtor's complaint, (2) ordering the Debtor or her attorneys to pay the surplus funds to the County Treasurer and (3) lifting this Court's temporary restraining order of March 12, 1982 against the Judgment Creditor.

### FINDINGS OF FACT

The parties' pleadings set forth numerous factual allegations which are neither directly nor implicitly disputed. The events of this case are as follows:

1. On September 19, 1978, the Judgment Creditor took a judgment for $1,710.15 against the Debtor. That judgment was docketed and under New York state law became a lien on any real property of the Debtor in the county docketed.

2. In September of 1979, the First Federal Savings and Loan Association, as mortgagee on the Debtor's real property residence, proceeded to foreclose its mortgage for default.

3. On February 20, 1980, the residential real property was sold in accordance with a judgment of foreclosure obtained by the mortgagee. The proceeds of the sale were distributed to the mortgagee and the surplus remaining, in the amount of $8,667.02, was deposited with the Onondaga County Commissioner of Finance (Treasurer) pursuant to New York Real Property Actions and Proceedings Law § 1441. The Judgment Creditor's judgment lien was not satisfied.

4. On March 20, 1980, the Debtor filed a notice of claim to the deposited surplus moneys. The Debtor declared that the surplus funds were not encumbered by the Judgment Creditor's lien because the Debtor exempted such funds from the money judgment lien pursuant to the homestead exemption in New York Civil Practice Laws and Rules, § 5206.

5. On April 3, 1980, the Debtor filed a joint petition with her husband for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (Supp. IV 1980). The foreclosure surplus funds were listed as exempt property under New York law in the Debtor's exemption schedules. By letter of April 30, 1980, the Trustee in bankruptcy informed the Onondaga County Treasurer that he released his interest in the surplus funds by virtue of the homestead exemption by the Debtor.

6. Moving back to New York state court, the Debtor made a motion on June 24, 1980 in New York Supreme Court to obtain the surplus moneys from the County Treasurer. The Judgment Creditor opposed that motion by claiming its superior right to the surplus funds due to her docketing the 1978 money judgment even prior to the foreclosure sale. By decision and order of July 2, 1980, the New York Supreme Court granted the Debtor's motion to release the surplus funds *after* the tax claims ($1,234.64) of the Internal Revenue Service had been satisfied.

7. Subsequently, the Appellate Division Fourth Department of the New York Supreme Court reversed the order of July 2, 1980. *See First Federal Savings and Loan Association of Rochester v. Robert N. Brown, Barbara B. Brown, and Virginia M. Dellinger, d/b/a Dellinger Art and Antiques,* 78 A.D.2d 119, 434 N.Y.S.2d 306 (4th Dep't 1980). The appellate court found that the lower court's analysis was erroneous on the law. The Debtor would not be able to exempt the surplus funds from the foreclosure sale under § 5206 of New York Civil Practice Laws and Rules because that statutory exemption for a homestead did not cover personal property in the nature of proceeds from a foreclosure sale of a homestead. The appellate court concluded that when the trustee in bankruptcy abandoned his interest in the surplus funds, title to the surplus reverted back to prepetition status subject to rights of any valid claims thereto such as the Judgment Creditor's docketed lien which passes from the particular realty to the surplus funds. *Id.* at 78 A.D.2d 121–23, 434 N.Y.S. at 309–10.

8. On February 4, 1981 in this Bankruptcy Court, the Debtor moved and was granted an order to amend her exemption schedule to switch from a claim of homestead exemption under New York state law to the federal homestead exemption under § 522(d)(1) of the Bankruptcy Code, 11 U.S.C. § 522(d)(1).

9. On June 15, 1981, the Judgment Creditor moved in the New York Supreme Court pursuant to Real Property Actions and Proceedings Law, § 1361(2) for the appointment of a referee to decide the proper distribution of the surplus funds. The aforesaid motion was granted and a referee appointed by order of September 21, 1981. The Debtor appealed such order of referee appointment contending that (1) the state court order was violative of the bankruptcy court's exclusive jurisdiction over the Debtor's property, and (2) such order was violative of the automatic stay against creditor enforcement proceedings provided in § 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a).

10. On or about February 26, 1982, the Fourth Department of the Appellate Division of the New York Supreme Court affirmed the order against the Debtor. The appellate court found that the subject property, the surplus funds, were not "property of the estate" of the Debtor under § 541(a)(1) of the Bankruptcy Code, 11 U.S.C. § 541(a)(1), and therefore the Debtor had *no* interest in the surplus funds. *See First Federal Savings & Loan Association of Roch-*

*ester v. Brown,* 86 A.D.2d 963, 448 N.Y.S.2d 302 (4th Dep't. 1982).

## DISCUSSION

■ The dispute between the Debtor and the Judgment Creditor centers on the post-bankruptcy petition rights of the Debtor to a "surplus moneys" fund which arose from a pre-petition foreclosure sale of the Debtor's New York real property. The Judgment Creditor contends that its docketed New York judgment lien operates to prevent the Debtor from having any legal or equitable interest in the fund as of the date of the bankruptcy petition. The Debtor's position is that the surplus funds were property of the Debtor at the date of the bankruptcy petition and has exempted such property from the bankruptcy estate by a duly authorized order to amend its claimed exemptions to the federal homestead exemption provision contained in § 522(d)(1) of the Bankruptcy Code. *See* 11 U.S.C. § 522(d)(1). Because there is no federal law of real property rights in foreclosure proceeds, *i.e.,* surplus moneys funds, the Debtor's property rights in such a surplus must be determined by New York Real Property Law. *Cf. In re Ford,* 3 B.R. 559, 564–65, 6 B.C.D. 202, 203–04, 1 C.B.C.2d 840 (Bkrtcy. D. Md. 1980), *aff'd,* 638 F.2d 14 (4th Cir. 1981) (per curiam) (The question of whether a tenancy by the entirety is a legal or equitable interest under Bankruptcy Code § 541(a)(1), 11 U.S.C. § 541(a)(1), requires careful examination of Maryland state law to ascertain the existence and nature of such a property interest). The issue of whether the New York state court orders are in contravention of the United States Bankruptcy Court's *exclusive* jurisdiction [1] is also entirely dependent on what,

if any, property interests the Debtor possessed on the date she filed her petition.

■ Before the foreclosure sale, the Judgment Creditor possessed a lien on the Debtor's real property.[2] It is well settled law that:

A lien may be defined as a charge upon property for the payment or discharge of a debt or duty. It is a right given by the law which may be exercised over the property covered by the lien to have the debt of the owner of the property satisfied out of it. *But a lien, although a charge upon property, confers no general right of property or title upon the [lien]holder.*

*Marine Midland Bank v. Marcel Enterprises, Inc.,* 91 Misc.2d 810, 811, 398 N.Y.S.2d 782, 783 (Genesee Co. Ct. 1977), *aff'd mem.,* 64 A.D.2d 812, 407 N.Y.S.2d 833 (4th Dep't 1978) (quoting 35 N.Y. Jur., *Liens* § 1) (Emphasis and brackets added). After the foreclosure sale, the Judgment Creditor's pre-foreclosure sale lien on the land simply [3] is transferred to the surplus moneys. *See Federal Land Bank of Springfield v. United States,* 21 A.D.2d 936, 937, 250 N.Y.S.2d 999, 1000 (3rd Dep't 1964); *Sadow v. Poskin Realty Corp.,* 63 Misc.2d 499, 503, 312 N.Y. S.2d 901, 905–06 (Sup. Ct. Sp. T. Queens Co. 1970).

The new Bankruptcy Code contains an expansive provision which states that "*all* legal *or* equitable interests of the debtor in property as of the commencement of the case" creates the estate of the debtor. 11 U.S.C. § 541(a)(1) (Emphasis added). From the property of the estate, the individual debtor may exempt property, *see* 11 U.S.C. § 522(b), as provided by his choice of federal or state law. *See* 11 U.S.C. § 522(b)(1)

1. Under 28 U.S.C. § 1471(e), "[t]he bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case."

2. *See* N.Y. Civ. Prac. Law, § 5203(a) (McKinney 1978).

3. It must be noted that "[o]nly those judgments and liens which existed upon the property at the time of the foreclosure sale constitute liens against the surplus moneys." *Pindus v. Newmat Leasing Corp.,* 71 A.D.2d 948, 949, 420 N.Y.S.2d 10, 13 (2nd Dep't 1979).

and (2).[4] There appears no reported New York law which definitively explains the nature of a mortgagor's interest in surplus moneys which are encumbered by outstanding judgment liens. The Judgment Creditor proposes that the Debtor has *no legal or equitable interest* in the surplus moneys fund. *Cf. In re Butchman,* 4 B.R. 379, 380, 6 B.C.D. 403, 404, 2 C.B.C.2d 174 (Bkrtcy. S.D.N.Y. 1980) (after foreclosure sale, the only "property of estate" under § 541 consists of *whatever* right the debtor might have with respect to the surplus remaining).

 The Court accepts as a matter of law that the surplus moneys have been deposited with the county treasurer, and that legal title to such funds is vested in the county treasurer "for the benefit of interested parties". *See* N.Y. Civ. Prac. Law, § 2601(b) and (c) (McKinney 1974 & Supp. 1981). Yet, a mortgagor such as the Debtor does not have all his rights to surplus moneys entirely severed by virtue of an encumbering money judgment lien on such proceeds. As the owner of the equity of redemption, he has an inferior equitable interest in the surplus moneys. Hypothetically, if the proper party, *e.g.,* Judgment Creditor, does not enforce his judgment lien to the surplus moneys, a New York court will direct payment to the mortgagor. *See Coffey v. Roe,* 52 Misc.2d 1003, 1005–06, 277 N.Y.S.2d 743, 746 (Sup. Ct. Delaware Co. 1967) (dictum). The Judgment Creditor argues that a lack of equity in the subject property, free of encumbrances, as of the date of the bankruptcy petition prevents this Debtor from bringing such property into the estate. The argument that equity is necessary to a debtor's interest in property is a familiar one that has been rejected by a number of bankruptcy courts. *See Matter of Lovett,* 11 B.R. 123, 124, 7 B.C.D. 585, 586, 4 C.B.C.2d 89 (W.D. Mo. 1981); *In re Kursh,* 9 B.R. 801, 802–03, 7 B.C.D. 592,

593, 4 C.B.C.2d 84 (Bkrtcy. W.D. Mo. 1981) and cases cited therein. The Debtor's inferior right to the surplus moneys is a sufficient *equitable* interest under § 541(a)(1) of the Bankruptcy Code. The fact that the Judgment Creditor holds a superior equitable interest as of the petition's filing is not sacrosanct. The Debtor may utilize his rights of lien avoidance under Code § 522(b)(1), 11 U.S.C. § 522(f)(1), to regain equity in previously encumbered property. The Debtor's lien avoidance power is not circumscribed by the fact that the Judgment Creditor's judicial lien arose years before the bankruptcy petition. *See In re Lumpkins,* 12 B.R. 44, Bankr. L. Rep. (CCH) ¶ 68,059 (Bkrtcy. D.R.I. 1981).

 The Debtor has sought to have the New York state court orders of December 23, 1980 and February 26, 1982 be declared null and void in contravention of this Bankruptcy Court's exclusive jurisdiction over the surplus funds. The Debtor's amending and deletion of his election of the New York homestead exemption renders the December 23, 1980 decision's effect as moot in this bankruptcy proceeding. Considering the latter decision of February 26, 1982, reported as *First Federal Savings & Loan Association of Rochester v. Brown,* 86 A.D.2d 963, 448 N.Y.S.2d 302 (4th Dep't 1982), I must respectfully disagree with its reading as to the scope of § 541(a)(1) of the new Bankruptcy Code because of that state court's reliance on Pre-Code bankruptcy decisions. As previously stated, under the new Bankruptcy Code the debtor's estate can include property in which the debtor has *no equity, i.e.,* property with encumbrances equal to or greater than the property's fair market value on the eve of the bankruptcy petition. Whether the bankruptcy court subsequently administers such property for the benefit of the estate or secured creditors is a secondary issue be-

---

**4.** *Contra* N.Y. Debt. & Cred. Law, Art. 10–A, § 284. Pursuant to § 522(b)(1) of the Bankruptcy Code, the New York state legislature has disallowed its residents from utilizing the federal schedule of property exemptions in Code § 522(d) if the resident files his bankruptcy petition *after* Sept. 1, 1982. *See* 1982 N.Y. Laws, Ch. 540, § 2.

yond the threshold question of this court's preliminary exclusive jurisdiction. Therefore, this bankruptcy court entertains and sustains this Debtor's collateral attack on the state court's lack of jurisdiction over the surplus moneys fund. *See Kalb v. Feuerstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940). As of the date of the Debtor's petition, this Court's exclusive jurisdiction includes the power to resolve competing claims to property alleged to belong to the Debtor. *See In re State of Missouri,* 7 B.R. 974, 980 (E.D. Ark. 1980), *aff'd,* 647 F.2d 786 (8th Cir. 1981); *See also Matter of Aurora Cord and Cable Co., Inc.,* 2 B.R. 342, 345, 5 B.C.D. 1310, 1311, 1 C.B. C.2d 486 (Bkrtcy. N.D. Ill. 1980). Had this Court abstained from its exclusive jurisdiction, *see In re Med General, Inc.,* 672 F.2d 716, 719 (8th Cir. 1982); *In re Heslar,* 16 B.R. 329, 332, 8 B.C.D. 760, 761 (Bkrtcy. W.D. Mich. 1981), then the New York state courts could have entered orders affecting property of the Debtor or the estate.

## II.

This record shows that the surplus fund totals $8,667.02 and such fund is unquestionably subject to a tax liability for $1,123.64, leaving the sum of $7,543.38 for the Debtor to recover. The Judgment Creditor seeks satisfaction of its lien from that remainder sum. The Debtor has previously amended her schedules so as to utilize the federal $7,500.00 "homestead" provision in Code § 522(d)(1). *See* 11 U.S.C. § 522(d)(1). This amendment was not contested by any interested party. Yet, the Court is troubled whether a debtor's interest in "surplus moneys" can qualify within any conceivable reading of § 522(d)(1) which requires that the real or personal property interest of the Debtor be "use[d] as a residence, . . . or . . . a burial plot for the debtor or dependent of the debtor." *See Id.* Rather, the value of *any* property [5] not exceeding $7,900.00 could be exempt under § 522(d)(5) if the debtor chooses no

property which qualifies for exemption as a residence *or burial plot under* Code § 522(d)(1). A subsequent amendment of the Debtor's choice of exemption at this late date will be permissible. *See, e.g., In re Lattimore,* 12 B.R. 111, 112 (Bkrtcy. W.D. N.Y. 1981); *see also* Rule 110 of Bankr. Proc.

## CONCLUSIONS OF LAW

A review of the new Bankruptcy Code's statutory provision for property of the estate, the bankruptcy court's jurisdictional grant under 28 U.S.C. 1471(e), and New York decisional law leads this Bankruptcy Court to conclude that the debtor's pre-petition inferior equitable interest in the surplus moneys remaining *after* foreclosure sale and alleged claims thereto remain within the exclusive jurisdiction of this Bankruptcy Court. In accordance with the aforesaid conclusions, it is

ORDERED, that this Bankruptcy Court holds exclusive jurisdiction over the surplus moneys as of the filing date of the Debtor's petition on April 3, 1980; and it is further

ORDERED, that the New York state court decision and order of February 26, 1982 pertaining to the Debtor's rights in the surplus fund is declared to be not entitled to *res judicata* or collateral estoppel in this Bankruptcy Court for lack of jurisdiction; and it is further

ORDERED, that the Debtor is allowed twenty (20) days to amend his exemption schedules; and it is further

ORDERED, the Judgment Creditor holds a lien superior to the equitable interest of the Debtor

ORDERED, the Judgment Creditor's counterclaim is dismissed.

---

**5.** *See In re Eagan,* 16 B.R. 439, 444 n. 8 (Bkrtcy. N.D.N.Y. 1982).